## Knaub, Appellant, *v.* Gotwalt

268

Argued May 25, 1966. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Lewis H. Markowitz,* with him *Markowitz, Kagen & Griffith,* for appellants.

*Donald H. Yost,* with him *William W. Wogan,* for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, June 24, 1966:
This is an appeal from the Order of the Court of Common Pleas which sustained defendant's preliminary objections to plaintiffs' complaint in trespass which claimed damages for mental shock and anguish.

Plaintiffs in this trespass action were the mother, father, and sister of a young boy who was struck and killed by defendant's automobile. Decedent and his sister were crossing a highway when defendant struck and killed him, hurling his body some 60 feet. The sister was untouched, although she was standing only three feet from her brother when he was killed. The parents of the decedent were sitting in a parked car just twenty-five feet from the accident, and they as well as the sister observed this tragic event and naturally they all suffered extreme mental shock and anguish.

In order to recover, plaintiffs urge us to overrule a long line of prior decisions of this Court which admittedly cover and control their case.

This Court has consistently held: "The rule is long and well established in Pennsylvania that there can be no recovery of damages for injuries resulting from fright or nervous shock or mental or emotional disturbances or distress, unless they are accompanied by physical injury or physical impact: Koplin v. Louis K. Liggett Co., 322 Pa. 333, 185 A. 744; Ewing v. Pittsburgh C. & St. L. Ry. Co., 147 Pa. 40, 23 A. 340; Fox v. Borkey, 126 Pa. 164; Huston v. Freemansburg Borough, 212 Pa. 548, 61 A. 1022; Morris v. Lackawanna and Wyoming Valley Railroad Co., 228 Pa. 198, 77 A. 445; Howarth v. Adams Express Company, 269 Pa. 280, 112 A. 2d 536; Hess v. Philadelphia Transportation Co., 358 Pa. 144, 56 A. 2d 89; Potere v. Philadelphia, 380 Pa. 581, 112 A. 2d 100; Gefter v. Rosenthal, 384 Pa. 123, 119 A. 2d 250." *Bosley v. Andrews,* 393 Pa. 161, 164, 142 A. 2d 263. This rule was reaffirmed as recently as *Cucinotti v. Ortmann,* 399 Pa. 26, 159 A. 2d 216.

This rule applies even where the complaining party seeking relief was not merely a nearby witness but the actual victim of the alleged negligent or frightening conduct. *Bosley v. Andrews,* 393 Pa., supra.

If we permitted recovery in a case such as this, our Courts would be swamped by a virtual avalanche of cases for damages for many situations and cases hitherto unrecoverable in Pennsylvania. As we said in *Bosley v. Andrews*, 393 Pa., supra (pp. 168-169) : "To allow recovery for fright, fear, nervous shock, humiliation, mental or emotional distress—with all the disturbances and illnesses which accompany or result therefrom—where there has been no physical injury or impact, would open a Pandora's box. A plaintiff might be driving her car alertly or with her mind preoccupied, when a sudden or unexpected or exceptionally loud noise of an automobile horn behind or parallel with her car, or a sudden loud and unexpected fire engine bell or siren, or a sudden unexpected frightening buzz-sawing noise, or an unexpected explosion from blasting or dynamiting, or an unexpected nerve-wracking noise produced by riveting on a street, or the shrill and unexpected blast of a train at a spot far from a crossing, or the witnessing of a horrifying accident, or the approach of a car near or over the middle line, even though it is withdrawn to its own side in ample time to avoid an accident, or any one of a dozen other everyday events, can cause or aggravate fright or nervous shock or emotional distress or nervous tension or mental disturbance. Such an event, if compensable, may cause normal people, as well as nervous persons and persons who are mentally disturbed or mentally ill, to honestly believe that the sudden and unexpected event caused them fright or nervous shock or nervous tension with subsequent emotional distress or suffering or pain or miscarriage or heart attack, or some kind of disease. In most cases, it would be impossible for medical science to prove that these subjective symptoms could not possibly have resulted from or been aggravated or precipitated by fright or nervous shock or nervous tension or emotional disturbance or distress, each of

which can in turn produce an ulcer or headaches or fainting spells or, under some circumstances, a heart attack, or a serious disease. For every wholly genuine and deserving claim, there would likely be a tremendous number of illusory or imaginative or 'faked' ones. Medical science, we repeat, could not prove that these could not have been caused or precipitated or aggravated by defendant's alleged negligent act."

We cannot permit such chaos to permeate our law of negligence.*

Order affirmed.

Mr. Justice COHEN and Mr. Justice EAGEN concur in the result.

---

* Pennsylvania's rule is consistent with that of the following jurisdictions: *Amaya v. Home Ice, Fuel & Supply Company,* 29 Cal. Rptr. 33, 379 P. 2d 513 (1963) ; *Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935) ; and *Resavage v. Davies,* 199 Md. 479, 86 A. 2d 879 (1952).

The law in the area of attempted recovery for mental suffering unaccompanied by physical injury or impact has been thoroughly examined by many jurisdictions in this Country. Virtually no jurisdiction permits recovery in the factual situation in the present suit where the person who allegedly is suffering an emotional upset is merely a witness to the negligent conduct and not the object or target of the defendant. See lengthy article in 18 A.L.R. 2d 220 for a complete discussion of that area.

Where the emotional upset is *intentionally* inflicted, most jurisdictions permit recovery. A number of jurisdictions require contemporaneous physical impact to permit recovery in this area. Among those jurisdictions are Arkansas, Illinois, Indiana, Kentucky, Maine, Massachusetts, Michigan, Missouri, New Jersey, New York, Ohio, Pennsylvania, Virginia and Washington. At least three jurisdictions—Connecticut, Texas and Wisconsin—have permitted recovery for mental and emotional upset unaccompanied by physical impact or injury.

Interestingly enough, in those situations where recovery is permitted for emotional upset, absent physical injury or impact, most of the factual situations deal with mothers in a state of pregnancy. See, for example, the early case of *Hill v. Kimball,* 76 Texas 210, 13 S.W. 59 (1890). An interesting and excellent discussion of this entire area may be found in 64 A.L.R. 2d 100.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

It is a matter of infinite regret to me that in the train of Progress in the Law of Humanity, Pennsylvania is a car frequently clattering close to the caboose instead of cheerfully gliding over the rails immediately behind the locomotive. Why is it that in ameliorating the rigors of the common law, Pennsylvania must copy after other States, rather than take the lead? For years the question of wiping out the immunity of charity institutions from tort liability was debated in Pennsylvania but it was not until 25 or 30 States had grandly marched by proclaiming with banners flying the conquest of natural justice over formalistic antiquated rules, and reason over slavish adherence to outmoded argument, that this State finally joined the happy parade.

How many States must repudiate the cruel rule announced in this case before Pennsylvania consents to march in the procession of recognition of realities? The Majority of this Court holds that there can be no recovery for physical infirmities caused through the senses unless there is a physical connection or impact between the instrumentality wielded by the tortfeasor and the injured person. This rule has become known as the impact rule.

Harper and James, in their authoritative and exhaustive work on The Law of Torts, have stated that "many Anglo-American jurisdictions have come to repudiate the requirement of impact, so that it is distinctly the minority rule today."

Why must Pennsylvania be listed among the minority when the greater number of jurisdictions upholds a proposition of natural justice? Why must Pennsylvania treat so cavalierly the Restatement of Torts, product of renowned scholars of the law who, in addition to researching the books, appraise and evaluate life's phenomena as written in the chronicles of the day and the

heart of man? The Restatement 2d, Torts declares (§436): "(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability. (3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence."

The Majority Opinion in the case at bar does not differentiate the Restatement from the facts present in this appeal. It stands wholly and solely on Stare Decisis, a rule which, in this particular phase of the law, rides the back of a bucking, charging bull in *Bosley v. Andrews*, 393 Pa. 161. In that case the bull aggressively pursued the plaintiff, Mrs. Bosley, some 15 feet with lowered, impaling horns and was diverted from goring her only because of the intervention of a collie-mongrel dog. This brave dog, after its dash across the stage of heroic action, was quickly forgotten, as was also reason and humanity when the court denied Mrs. Bosley the right to recover damages from the owner of the belligerent bull because its stampeding hooves had not actually trampled upon her, or its horns had not pierced her body. This, in spite of the fact that she positively suffered physical damage from the attack. The medical evidence established that the heart condition which now disabled her for life had been precipitated by the "running, the chasing and the fear that was caused when the bull chased her."

In my Dissenting Opinion filed in that case I said: "I wish to go on record that the policy of nonliability announced by the Majority in this type of case is insupportable in law, logic, and elementary justice—and

I shall continue to dissent from it until the cows come home."

The Majority Opinion filed here today does not assure me that the cows are on the way to the barn. And yet it would seem that even bovine appreciation—and I mean no disrespect in this observation—should distinguish between justice and injustice in cases of this character.

The rule that there must be the mechanical requirement of impact, before recovery will be permitted, charges with lowered head against the stone wall of the most elementary phenomena observable practically every day. The impact rule presupposes that there can be no damage done to man's physical structure unless a material object dashes against it. Yet we know that people die of fright, persons faint from shock, and individuals collapse from grief, without any of these unfortunates having been touched by the event which precipitated the disastrous result.

I repeat that I regret that Pennsylvania lags on the road to the adjustment of law to reality. In faraway Australia, the high Court there held that a plaintiff could recover for shock caused when she saw her four-and-a-half-year old child struck and injured because of the defendant's negligence. (*Richards v. Baker*, [1943] S. Austr. St. 245.)

In an English case (*Hambrook v. Stokes Bros.*, [1925] 1 K.B. 141), a runaway truck, which had been insecurely parked at the top of a hill, ran down a declivity where children were playing. A woman, witnessing the careening vehicle, feared that it might kill her child who was playing in the area. Someone informed her that her child had indeed been hurt and when she visited the hospital and saw her child in bed she suffered a shock which resulted in her death. The Court of Appeal ruled that even though there had been no impact between the truck and the mother, her es-

tate was entitled to recover if it could be proved that the defendant could have anticipated that if his truck got away unattended "it might terrify some woman to such an extent, through fear of some immediate bodily injury to herself, that she would receive such a mental shock as would injure her health."

After stating this proposition, the Court sagely observed that the fault of the defendant would be no less, because the woman was concerned about the fate of her child rather than herself. It then proceeded to demolish the oft-repeated argument that one cannot claim damages for anguish caused by threat of harm to one other than himself or herself. Solomonically, the Court, speaking through Lord Justice BANKES, gave the illustration of two women on the road, each one shepherding her child. A truck comes roaring toward them. One woman is brave and fears for what may happen to her child. The other is timid and is concerned only because of what may happen to her. The health of both women is seriously affected by the mental shock occasioned by the fright. The Lord Justice then, commenting on such a situation said: "Will the law recognize a cause of action in the case of the less deserving mother, and none in the case of the more deserving one? Does the law say that the defendant ought reasonably to have anticipated the non-natural feeling of the timid mother, and not the natural feeling of the courageous mother, I think not."

In the case before us for judgment, Dennis Knaub, a young boy, was crossing the street with his sister Nancy. His parents were seated in an automobile 25 feet away. Dennis was struck by the defendant's automobile with such violence that his body was hurled 60 feet into the air and impaled on an iron picket fence. The parents and the little sister Nancy were so physically stricken from the unspeakable horror of what they witnessed that the shock resulted in serious physi-

cal damage to them. In the ensuing suit against the driver of the offending car, the trial court held that there could be no recovery because there had been no impact between the vehicle and the plaintiffs. This Court has sustained that proposition citing *Bosley v. Andrews*. Repeating what was said in the *Bosley* case, the Majority says today that: "To allow recovery for fright, fear, nervous shock, humiliation, mental or emotional distress—with all the disturbances and illnesses which accompany or result therefrom—where there has been no physical injury or impact, would open a Pandora's box."

I would rather see the opening of a Pandora's box than the closing of a coffin over an elementary principle of Justice. What difference does it make whether a defendant's car cuts off a leg or, as was claimed in the complaint of each plaintiff here, his or her "entire physical system was greatly weakened"?

The plaintiffs sustained a nervous shock. Is that not compensable? Judge KENNEDY in the English case of *Dulieu v. White,* [1901] 2 K.B. 669, said that "nervous shock is or may be in itself an injurious affection of the physical organism." The plaintiffs in this case experienced fear, worry, anguish. While these sensations are ordinarily regarded subjective symptoms, they are indeed very objective. No one has lived if he has not felt or at least seen what happened when an emotional experience was of such gravity that the beholder's or the listener's face blanched, his lips quivered, his hands trembled, his legs lost steadiness, his heart beat almost with audible rapidity, sweat beads stood out on his skin, and the breathing came hard and hurried. Dr. Geo. W. Crile, Professor of Surgery at Western Reserve, said, after research in this department of study, that "we fear not in our hearts alone, in our brains alone, in the inner viscera alone—fear influences every organ and tissue."

What provokes laughter? Is laughing not the result of a mental appraisement? But laughter itself is not mental. Abdominal, facial, and labial muscles, vocal cords, larynx and pharynx must all operate and coordinate in order to produce a hearty guffaw. What are tears? Except when they are concomitant with torture or whipping, they are the result purely of intangible thought. One thinks of a lost relative, a departed friend, a tragic event, and a saline solution forms in the eyes. A great deal of physical machinery goes into action to manufacture those drops of water, and it would be sheer perversity to say that there is no connection between the item of grief and the distillation of the resulting tears.

Can laughter and weeping ever be physically injurious? It is no figure of speech that people have actually laughed themselves to death. It is no rhetorical exaggeration to say that people have died of weeping and grief. There is, indeed, an objective linking—of cause and effect—between outer phenomenon and physical reaction.

The nervous system is peculiarly susceptible to nontangible excitation, and it is not to be denied that the wrecking of nerve ganglia can often be more disabling than the breaking of bones or the tearing of flesh. And where it is definitively established that such injury and suffering were proximately caused by an act of negligence, why should the tortfeasor not be liable in damages? Is law so lacking in the cognizance of natural science that it is incapable of following the fiery trajectory of the intangible bolt of lightning which blasts the towering tree?

That the whole physical organism reacts to emotional trauma is a matter of such common experience that one should not have to dwell on it. And yet this Court would close its eyes to this elementary truism, fearful that if a recovery is allowed for emotional dis-

turbances, the courts will be flooded with spurious claims. Still, this Court affirms recovery for defamation of character, humiliation and embarrassment following written or spoken words, although there is obviously no physical impact between the slanderer and his victim.

The law libraries house numerous state and federal reports of cases where recovery has been allowed for physical disablement following an emotional trauma unaccompanied by mechanical contact between the tortfeasor and the victim. In the case of *Frazee v. Western Dairy Products,* 182 Wash. 578, 47 P. 2d 1037, a mother who was three months pregnant, saw a truck climb over a sidewalk and advance toward her infant son. She suffered a miscarriage and obtained a verdict. The Supreme Court of Washington affirmed, stating: "There is here involved a negligent act which released a dangerous physical agency, by which, under certain circumstances, a severe mental strain by way of fright would naturally be occasioned. Such a fright would almost necessarily follow a direct physical menace from the runaway truck. The degree of fright and the resulting effects therefrom might vary greatly according to the person affected and the circumstances . . .

"In the case at bar, the jury may well have found that, as a result of the fright suffered by Mrs. Frazee, she suffered an immediate physical injury."

In *Rasmussen v. Benson,* 135 Nebr. 232, 280 N.W. 890, the defendant, intending to kill grasshoppers, placed arsenic in a sack of bran. Later he forgot about the arsenic and the grasshoppers and sold the bran to a dairyman who fed the bran to his cows. Five of them died. The dairyman, anguishing that the arsenic poison might kill his customers who drank milk from his cows, became ill and died from a decompensated heart. His widow sued the bran vendor and recovered a verdict. The Nebraska Supreme Court affirmed the

verdict, stating: "This is not an unusual or unexpected result of the appellant's negligence anyhow. The tortfeasor seldom contemplates the amount of the resulting injury, and that he does not anticipate the extent of the damage does not bring the case within that rule."

In the case of *Battalla v. State*, 10 N.Y. 2d 237, 219 N.Y.S. 2d 34, the minor plaintiff suffered consequential injuries because of fright occasioned by the neglect of an employee at a ski center to fasten and lock a belt in a chair lift. The minor's guardian asked for damages claiming that the minor suffered "severe emotional and neurological disturbances with residual physical manifestations." The appellate Division of the New York Supreme Court held that "there could be no recovery for injuries, physical or mental, incurred by fright negligently induced." The Court of Appeals, New York's court of last resort, reversed, stating: "It is undisputed that a rigorous application of . . . [this] rule would be unjust, as well as opposed to experience and logic . . . 'We act in the finest common-law tradition when we adopt and alter decisional law to produce common-sense justice . . . Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule.' "

In that New York case the defendant strenuously argued, as the Majority Opinion insists here, that to allow suits of this character would encourage spurious lawsuits. The Court of Appeals answered: "Even if a flood of litigation were realized by abolition of the exception, it is the duty of the courts to willingly accept the opportunity to settle these disputes . . . In many instances, just as in impact cases, there will be no doubt as to the presence and extent of the damage and the fact that it was proximately caused by defendant's negligence. In the difficult cases, we must look to the

quality and genuineness of proof, and rely to an extent on the contemporary sophistication of the medical profession and the ability of the court and jury to weed out the dishonest claims. Claimant should, therefore, be given an opportunity to prove that her injuries were proximately caused by defendant's negligence."

In *Bowman v. Williams*, 165 Atl. 182, the plaintiff's fear for safety of his children when he saw the defendant's negligently operated truck crash into the basement of his house, incapacitated him for six months. He obtained a verdict which the Supreme Court of Maryland affirmed, stating: "There is, therefore, on principle and weight of argument, no reason to deny to the plaintiff a right to recover in this action, because of the fact that the injury might have arisen from fear for the safety of the plaintiff's children rather than for his own. It is a fundamental principle that, where legal injury has resulted, without any break in the chain of causation, from a wrong, a right of action for damages arises . . ."

"It is objected that the effect of fright is subjective, imaginative, conjectural, and speculative, and therefore easily simulated and feigned, so that its actual existence is difficult to ascertain, and, if found to exist, is inherently insusceptible of compensation by any precise pecuniary standard. These considerations undeniably tend to multiply fictitious or speculative claims, and to open to unscrupulous litigants a wide field for exploitation, but these difficulties are common, are surmountable, and so should not prevent the operation of the general and fundamental theory of the common law that there is a remedy for every substantial wrong."

Dean William Prosser, recognized authority in the law of torts, has said: "It seems sufficiently obvious that the shock of a mother at danger or harm to her child may be both a real and a serious injury." (Law of Torts (2d ed. 1955), 181)

282

In *Haight v. McEwen*, 43 Misc. 2d 582, 583, 251 N.Y.S. 2d 839, 840, Judge SULLIVAN said: "the tendency of the law today is in the direction of allowing recovery both for mental injury and harm to a third person—at least one intimately connected with the event."

I would like to see this honored Court following that tendency. I would prefer, in fact, to see it take the lead and be in the vanguard rather than in the rear ranks of the forces battling to overcome outmoded reasoning, unrealistic precedents, mechanical adherence to illogical rules, and doctrines which have no place in the twentieth century of a greater appreciation of the sanctity of human life and all that life holds dear.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I dissent. In my view, the issue presented by this case should be governed by the adoption of the standard contained in the Restatement 2d, Torts, §§436(2), 436(3) (1965), which provide: "(2) If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability. (3) The rule stated in Subsection (2) applies where the bodily harm to the other results from his shock or fright at harm or peril to a member of his immediate family occurring in his presence."

Jurisdiction after jurisdiction which has considered this problem has recognized the injustice inherent in the so-called "impact" rule, until a preponderance now have abandoned that requirement as a predicate to recovery.* The time is long overdue for this Commonwealth to do likewise.

---

* Restatement 2d, Torts, §436 (1965), Reporter's Notes, Appendix, pp. 166-170, and cases cited therein,

I fail to comprehend the unreasonable fear of encouraging fictitious claims which seems to pervade any consideration of this issue. Why should that possibility be any more prevalent here than in any other area of the law, and why should the usual processes of litigation be inadequate to deal with this problem should it arise? Moreover, why should such speculation be the basis of denying compensation to those who have actually suffered injury through the negligence of another? Being unable to answer these questions satisfactorily, I must dissent.