Jules KUTNER and Todd Berger, Andrew Berger and H. Tony Berger, minors, by Carol Berger, individually and in her own right

v.

EASTERN AIRLINES, INC.

Civ. A. No. 79–2254.

United States District Court,
E. D. Pennsylvania.

May 20, 1981.

Wilbur Greenberg, Sidkoff, Pincus, Greenberg & Green, P. C., Philadelphia, Pa., for plaintiff.

James K. Brengle, Duane, Morris & Heckscher, Philadelphia, Pa., for defendant.

## MEMORANDUM AND OPINION

RAYMOND J. BRODERICK, District Judge.

The defendant has filed a motion for summary judgment. This action was brought under the Federal Aviation Act of 1958, § 404(a), (b), 49 U.S.C. § 1374(a), (b), and state tort and contract law. The plaintiffs, Jules Kutner, his daughter, Carol Berger, and her three sons, were passengers on defendant Eastern Airlines' Flight 38F on February 21, 1979. The flight was scheduled to depart from Miami, Florida at 5:30 P. M. for Philadelphia, Pennsylvania and Syracuse, New York. In fact, it departed from Miami at 6:14 P. M. and, because of weather conditions in the Philadelphia area, did not land there but flew directly to Syracuse. Only 29 of the 294 passengers on board intended Syracuse to be their destination; the other 265, including the plaintiffs, were Philadelphia-bound passengers. On arrival in Syracuse, the Philadelphia passengers were entitled to various services under a tariff filed by the defendant pursuant to federal law. Relevant here is the defendant's duty under this tariff to provide meals, lodgings, and local ground transport, and to advise all diverted passengers of the availability of these services.

According to Eastern, shortly after their arrival in Syracuse at about 10:10 P. M., the diverted passengers were offered a choice of two alternatives: 1) overnight lodgings in Syracuse with transport to and from the airport and first available space on flights to Philadelphia the next morning, or 2) immediate charter bus transportation to Philadelphia. Eastern claims that approximately 70–80 passengers chose the former alternative, that approximately 185 chose the latter, and that the busses to Philadelphia departed at about 12:30 A. M. on the 22nd of February.

Plaintiffs' view of the incident is somewhat different. Summarizing the deposition testimony of Jules Kutner and Carol Berger, the plaintiffs received no assistance from the airline when they deplaned in Syracuse. At least four Eastern officials whom they asked about the airline's plans to care for the diverted passengers were "baffled," "had no answers," or were "evasive." An announcement made by Eastern failed to calm the plaintiffs because it stated only that the airline was "looking into modes of getting us home the next day" and "trying to work it out" without mentioning provisions for lodgings that night. After waiting the better part of an hour with no further relief forthcoming, and the three boys, who were then 12, 9 and 6 years old, becoming cranky, tired, and hungry, the plaintiffs decided to rent a car and drive back to Philadelphia. Despite the prospect of driving all night through what proved to be "icy conditions and fog," plaintiffs made no attempt to find lodgings in the Syracuse area on their own. They arrived in Philadelphia at 6:15 A. M. on the 22nd of February, safe but anguished and outraged by their all night drive in "ungodly" conditions. Plaintiffs later found out that a fellow passenger who had accepted

the proffered bus trip arrived in Philadelphia at about 11:00 A. M. on the same day.

Shortly after their arrival in Philadelphia, plaintiffs were told by an unidentified party that Philadelphia International Airport had been closed due to bad weather even before the time of their scheduled departure from Miami. Plaintiffs sought to confirm this allegation, one that Eastern categorically denies, by calling the airline and the airport, and they soon obtained a letter from the Facility Chief of the Philadelphia Airport International Tower stating that "Philadelphia International Airport was below published landing minima from February 21, 1979 at 5:03 P. M. until February 22, 1979 at 8:22 A. M." Plaintiffs then initiated this suit against Eastern.

In their complaint, the plaintiffs alleged that Eastern's conduct violated its own tariff and the Federal Aviation Act of 1958, § 404(a)–(b), 49 U.S.C. § 1374(a)–(b) but they have since requested leave to amend their complaint to allege instead a violation of § 403 of that Act, 49 U.S.C. § 1373, which amendment is hereby granted. They further claim that as Eastern personnel knew or should have known of conditions at the Philadelphia airport, the airline's conduct in allowing Flight 38F to depart from Miami without informing plaintiffs of these conditions was "extreme, outrageous, intentional and/or reckless." Plaintiffs characterize the conduct of Eastern personnel at the Syracuse airport in a like manner. They maintain that solely as a consequence of Eastern's conduct they "were made to undergo great mental anguish and severe shock to their nerves and nervous system," to the extent of $15,000.00 in compensatory and $15,000.00 in punitive damages for each of the five plaintiffs. Further, each plaintiff claims damages in these amounts under a second cause of action, which alleges that Eastern, by the conduct described above, breached its contract of carriage, resulting in the aforementioned or similar mental and nervous consequences. Plaintiffs also claimed for the out-of-pocket expenses incident to their automotive journey, but they have since been reimbursed by Eastern for these expenses.

After the taking of depositions and the exchange of interrogatories and answers, the case was referred to arbitration pursuant to Local Civil Rule 49, Section 4(a)(1) on March 3, 1980. On April 8, 1980, the arbitrators heard and decided the case in favor of the defendant. Plaintiffs then filed a demand for a trial de novo, whereupon the defendant moved for summary judgment under Federal Rule of Civil Procedure 56.

In deciding the motion for summary judgment, the Court has accepted the plaintiffs' contentions as to all of the controverted facts. None of the controverted facts are "material" as to whether the plaintiffs have a cause of action. Furthermore, all of the evidence has been construed in favor of the plaintiffs, the parties opposing the motion, and the plaintiffs' evidence has been given the benefit of all favorable inferences. It is on this basis that the Court has determined that for the purpose of this summary judgment motion there are no genuine issues of material fact. For the reasons that follow the motion for summary judgment will be granted.

I.

Neither 49 U.S.C. § 1373 nor 49 U.S.C. § 1374 expressly authorizes a private right of action to enforce its provisions. In determining whether a private remedy is implicit in this or any such statute, a court must consider four factors:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted,"—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? (citations omitted)

*Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975).

The Court of Appeals for the Third Circuit has applied the *Cort* test to claims brought under the aforementioned sections of the Federal Aviation Act in two recent cases. *Wolf v. Trans World Airlines*, 544 F.2d 134 (3d Cir. 1976), *cert. denied*, 430 U.S. 915, 97 S.Ct. 1327, 51 L.Ed.2d 593 (1977) (construing 49 U.S.C. § 1373(b)), *Polansky v. Trans World Airlines, Inc.*, 523 F.2d 332 (3d Cir. 1975) (construing 49 U.S.C. §§ 1374(b) and 1381). In each case the court rejected the plaintiffs' contention that the statutory section or sections relied upon by them implicitly provided for a private cause of action. *See also Rauch v. United Instruments, Inc.*, 548 F.2d 452 (3d Cir. 1978).

In *Polansky*, the plaintiffs were participants in a European tour sponsored by Trans World and a travel agency. When tour amenities proved inferior to what the defendants had promised in their advertising, plaintiffs brought suit under 49 U.S.C. §§ 1374(b) and 1381. Applying the four pronged *Cort* test to the facts of the case under the 1374(b) claim, the court found 1) that although plaintiffs, as air passengers, were members of the class § 1374(b) was intended to protect, they "did not suffer the harm the statute was designed to prevent," namely, "discriminatory denial of access to air facilities," 523 F.2d 335, 336; 2) that the legislative history of § 1374(b) was of little value in determining whether a private remedy was implicit in the statute, *id.* at 336; 3) that 49 U.S.C. §§ 1302(c) and 1304 suggested that the implication of a private remedy on these facts "would not be consistent with the policy of the Federal Aviation Act," *id.*, and, 4) that because there was a state remedy for breach of contract, breach of warranty, and fraudulent misrepresentation available, "it would be entirely appropriate" to relegate the plaintiffs to their remedies under state law, *id.* at 337. The Court thus held that no private right of action was implicit in § 1374(b) to remedy the plaintiffs' complaint. Its conclusion that they had no remedy under § 1381 is not relevant here.

In *Wolf v. Trans World Airlines, Inc.*, *supra*, a private suit brought under 49 U.S.C. §§ 1373 and 1381 came to a like end. Here too plaintiffs were participants in a European tour sponsored by Trans World and a travel agency. The plan under which they traveled included, *inter alia*, a flight to Europe and twelve nights in a guest house while there. In order to avail themselves of their lodgings, tour participants were required to present their guest house vouchers to the guest house that was to accommodate them by 6:00 P. M. on the date of their arrival in Europe. The guest houses were, however, located between 185 and 480 miles from plaintiffs' flight arrival cities so that it was impractical for them to meet the 6:00 P. M. deadlines. Forced to seek out lodgings on their own despite the claims of Trans World's advertising, the tour participants brought suit under 49 U.S.C. §§ 1373(b) and 1381. The court followed *Polansky* as to the § 1381 claim and in applying the second, third, and fourth of the *Cort* considerations to the § 1373(b) claim. But as to the first of these considerations the court found that the plaintiffs were not "the special beneficiaries" of the statute. 544 F.2d at 137. "Because [§ 1373(b)] proscribes violations of the tariff that inure to passengers' benefit as well as to their detriment, we conclude that [it] could not have been passed especially for the benefit of those in plaintiffs' position." *Id.* Consequently, the grounds for finding a private cause of action implicit in § 1373(b) being even weaker than those for finding the same in § 1374(b), the Court affirmed the district court's dismissal of the plaintiffs' claim.

The *Wolf* case clearly requires this Court to hold that plaintiffs here have no private remedy under § 1373. The purpose of the Federal Aviation Act is:

> The promotion of adequate, economical, and efficient service by air carriers at reasonable charges, without unjust discriminations, undue preferences or advantages, or unfair or destructive competitive practices.

**557**

49 U.S.C. § 1302(c). But "in this instance the remedy sought would not aid the primary congressional goal." *Cort v. Ash,* 422 U.S. at 84, 95 S.Ct. at 2090. The conduct allegedly committed by Eastern in this case may constitute one or more violations of state law but "[o]nly where there is some countervailing national interest should the federal courts imply a federal private remedy when an adequate state remedy already exists," *Wolf v. Trans World Airlines,* 544 F.2d at 138, *quoting Polansky v. Trans World Airlines,* 523 F.2d at 337. Therefore, no private right of action has been alleged pursuant to 49 U.S.C. § 1373.

## II.

As the parties to this diversity action have correctly assumed, the plaintiffs' tort and contract claims are governed by Pennsylvania law. *Klaxon Co. v. Stenton Electric Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Griffith v. United Airlines, Inc.,* 416 Pa. 1, 203 A.2d 796 (1964); *Melville v. American Home Assurance Co.,* 584 F.2d 1306 (3d Cir. 1978). These claims fall under three theories of recovery: 1) intentional infliction of emotional harm; 2) negligent infliction of emotional harm; and 3) emotional harm caused by breach of contract. The following discussion will show that Pennsylvania does not permit recovery under any of these theories on the facts alleged by the plaintiffs.

### 1) *Intentional infliction of emotional harm*

According to the Restatement (Second) of Torts § 46(1) (1965):

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

In *Papieves v. Lawrence,* 437 Pa. 373, 263 A.2d 118 (1970), where the defendants secretly buried the body of the plaintiffs' son after he had died subsequent to an auto accident, the Pennsylvania Supreme Court "indicated that when presented with the proper case it would adopt the formulation of Section 46." *Jones v. Nissenbaum, Rudolph & Seidner,* 244 Pa.Super. 377, 382, 368 A.2d 770, 772–73 (1976). *See also Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1273 (3d Cir. 1979). The elements of a cause of action under § 46(1) are that 1) the conduct of the defendant must be extreme and outrageous; 2) it must be intentional or reckless; 3) it must cause emotional distress; and 4) the emotional distress must be severe. *Id.* at 1273; *Mazzula v. Monarch Life Insurance Co.,* 487 F.Supp. 1299 (E.D. Pa.1980).

Assuming that the second, third, and fourth elements of the § 46(1) cause of action are present here, the plaintiffs cannot recover under this section nonetheless, for the first is clearly absent. According to comment d to § 46 of the Restatement:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

In a § 46 action, "[I]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." Restatement (Second) of Torts, § 46, comment h. *See also Chuy v. Philadelphia Eagles Football Club,* 595 F.2d at 1274. The Court has determined that Eastern's conduct in the present case cannot, as a matter of law, be characterized as sufficiently extreme and outrageous to meet this standard.

### 2) *Negligent infliction of emotional harm*

Until recently Pennsylvania adhered to the "impact" rule, according to which "there can be no recovery of damages for injuries resulting from fright or nervous

shock or mental or emotional disturbances or distress, unless they are accompanied by physical injury or physical impact (citations omitted)." *Knaub v. Gotwalt,* 422 Pa. 267, 270, 220 A.2d 646, 647 (1966). The rule applied even where the plaintiff was not a bystander but the actual victim of the disturbing or frightening conduct. *See Bosley v. Andrews,* 393 Pa. 161, 142 A.2d 263 (1958). It also prohibited recovery where the defendant was a carrier and the victim of the distress a passenger on one of its vehicles. *Morris v. Lackawanna and Wyoming Valley Railroad Co.,* 228 Pa. 198, 77 A. 445 (1910). However, if a plaintiff sustained "physical injury or physical impact in any degree, no matter how slight, he [was] entitled to recover for fright or emotional distress." *Zelinsky v. Chimics,* 196 Pa.Super. 312, 317, 175 A.2d 351, 353 (1961). *See also Potere v. City of Philadelphia,* 380 Pa. 581, 112 A.2d 100 (1955); *Hess v. Philadelphia Transportation Co.,* 358 Pa. 144, 56 A.2d 89 (1948); *Plummer v. United States,* 580 F.2d 72 (3d Cir. 1978). For examples of the operation of the "impact" rule, *compare Morris v. Lackawanna and Wyoming Valley Railroad Co., supra, with Samarra v. Allegheny Valley Street Railway Co.,* 238 Pa. 469, 86 A. 287 (1913); *and Koplin v. Louis K. Liggett Co.,* 322 Pa. 333, 185 A. 744 (1936) *with Menaker v. Supplee-Wills-Jones-Milk Co.,* 125 Pa.Super. 76, 189 A. 714 (1937).

In *Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) the Pennsylvania Supreme Court chose to abandon the "impact" rule as to "damages proximately caused by the tort in only those cases . . . where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where plaintiff actually did fear the physical impact." *Id.* at 413, 261 A.2d at 90. The plaintiff in *Niederman* was hospitalized for five weeks due to heart ailments that he sustained when the defendant's automobile skidded onto a Philadelphia sidewalk, striking the plaintiff's son but not the plaintiff himself. Thus, as the Court noted, *id.* at 404, 261 A.2d at 85, its holding was in harmony with the approach adopted by the Restatement, § 436(2) of which states:

If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

*See also Bowman v. Sears, Roebuck & Co.,* 245 Pa.Super. 530, 369 A.2d 754 (1976).

However, in *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), the Pennsylvania Supreme Court appears to have extended *Niederman.* The plaintiff in *Sinn* was standing near the front door of her home when the defendant's automobile struck and killed one of her daughters, a minor. The plaintiff had neither been in personal danger of physical impact nor had feared such impact and thus could not have recovered under *Niederman. See Scarf v. Koltoff,* 242 Pa.Super. 294, 363 A.2d 1276 (1976). Notwithstanding, four justices of the Court agreed that the plaintiff should be given an opportunity to prove that she was "emotionally shattered" and "sustained grievous mental pain" as a result of witnessing her daughter's death. However, only two of the justices explicitly agreed that a foreseeability standard should replace the zone of danger concept in limiting liability, 486 Pa. at 173, 404 A.2d at 686. One justice merely concurred in the result while, in Chief Justice Eagen's view, a plaintiff outside the zone of danger should not be permitted to recover unless he or she "suffers serious mental distress as a result of viewing the accident and physical injury or suffers serious mental distress and there is a severe physical manifestation of this mental distress," *id.* at 174, 404 A.2d at 687 (Eagen, C. J., concurring).

*Sinn* has been regarded as further expanding the *Niederman* approach. *DiSalvatore v. United States,* 499 F.Supp. 338, 343 n.4 (E.D.Pa.1980). *See also* 25 Vill.L. Rev. 195, 211 (1979) (*Sinn* provides an exception to the zone of danger rule). Similarly, the Court of Appeals for this Circuit

has interpreted *Niederman* as "supplement[ing] and broaden[ing], rather than replac[ing], the old 'impact' rule." *Plummer v. United States*, 580 F.2d at 76–77; *Kahle v. Glosser Brothers*, 462 F.2d 815 (3d Cir. 1972).

■ Plaintiffs have not stated a cause of action under the Pennsylvania impact rule. The rule bars recovery where there has been no physical impact or physical injury. Neither physical impact nor physical injury has been alleged by the plaintiffs. *See generally, Potere v. City of Philadelphia supra; Hess v. Philadelphia Transportation Co., supra; Applebaum v. Philadelphia Rapid Transit Co.*, 244 Pa. 82, 90 A. 462 (1914); *Fox v. Borkey*, 126 Pa. 164, 17 A. 604 (1889); *Zelinsky v. Chimics, supra.*

■ Plaintiffs are also barred from recovering under *Niederman*. The plaintiffs have not alleged a cause of action within the so-called zone of danger rule as set forth in *Niederman*, which requires "damages proximately caused by the tort" where the danger of physical impact to the plaintiff is due to "the direction of a negligent force against him." Here the mental anguish suffered by the plaintiffs resulted from their decision to drive from Syracuse to Philadelphia in bad weather through the night. *See Griffin v. Baltimore & Ohio Railroad Co.*, 67 Pa.Super. 392 (1917). There is no allegation that Eastern created any negligent force that threatened the plaintiffs with a danger of physical impact.

Finally, the plaintiffs' allegations do not support a cause of action under the *Sinn* foreseeability doctrine. Eastern could not have foreseen that the plaintiffs would elect to drive to Philadelphia under the circumstances rather than seek lodgings in the Syracuse area or await the next available transportation.

Consequently, the plaintiffs have failed to state a cause of action under the impact rule, the *Niederman* zone of danger rule, or the *Sinn* foreseeability doctrine.

3) *Emotional harm caused by breach of contract*

■ In order to recover under the contract theory, plaintiffs must allege physical injury or physical impact. *Gefter v. Rosenthal*, 384 Pa. 123, 119 A.2d 250 (1956). *See also, Emerman v. Baldwin*, 186 Pa.Super. 561, 142 A.2d 440 (1958); Restatement of Contracts § 341 (1932); Restatement (Second) of Contracts § 367 (Tent, Draft No. 14, March 1, 1979) (all disallowing recovery for emotional disturbance resulting from breach of contract in the absence of bodily harm caused by the breach). In short, in order to recover under this theory, a plaintiff must also allege facts sufficient to overcome the bar of the impact rule.

### III.

Plaintiffs have therefore failed to state a cause of action under any theory of recovery presently available to them under Pennsylvania law. Nor have they stated a cause of action under the Federal Aviation Act of 1958, § 403, 49 U.S.C. § 1373. It is therefore unnecessary to consider plaintiffs' claims for punitive damages. It is also unnecessary to consider defendant's contention that plaintiffs' claims do not satisfy the jurisdictional standard of 28 U.S.C. § 1332, which requires, *inter alia*, that the amount in controversy be more than $10,000. *Cf.* Federal Question Jurisdictional Amendments Act of 1980, Pub.L.No.96–486, 94 Stat. 2369 (1980) (eliminating the amount in controversy requirement as to federal question jurisdiction).

Since the Court has considered matters of record outside the pleadings, and there being no genuine issues of material fact, defendant's motion for summary judgment will be granted.