## Marcus *v.* Frankford Hospital, Appellant.

Argued November 23, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*John R. Warner,* with him *Marshall, Dennehey & Warner,* for appellant.

*Samuel J. Marks,* with him *Marks and Marks,* for appellees.

OPINION PER CURIAM, October 12, 1971:

The Court being equally divided, the judgment of the court below is affirmed.

Mr. Justice COHEN took no part in the decision of this case.

———

OPINION IN SUPPORT OF THE ORDER BY MR. JUSTICE POMEROY:

At issue in this appeal is the refusal of the court below to grant the motions of the defendant Frankford

Hospital for judgment n.o.v. and for a new trial following the return of a jury verdict in the sum of $11,000 in favor of the plaintiffs, Rochelle Marcus, a minor, and her parents.

The facts of the case are as follows: In 1964 Miss Marcus, then fourteen years of age, answered an advertisement placed in a local newspaper by the American Red Cross for volunteer hospital aides, commonly known as "candy-stripers". Miss Marcus was interviewed by workers for the Red Cross; in the course of that interview she indicated her preference as a volunteer was for child service or office work. After obtaining her parents' written permission and a certificate of good health from her family doctor, she was assigned by the Red Cross to the volunteer program conducted by Frankford Hospital. Together with other volunteers, she was given a two-day course of training and orientation by the hospital which consisted, *inter alia*, of lectures, demonstrations in giving out meals and flowers and making beds occupied by patients, and a tour through the hospital. Under the Frankford Hospital volunteer program, aides were not permitted to work in the departments of pediatrics and obstetrics or the emergency, accident or operating rooms.

Following the completion of her orientation, Miss Marcus worked at the hospital on three nonconsecutive days from 9:00 a.m. to 2:00 p.m. On those days, she performed routine volunteer services in the men's and women's surgical wards—reading mail to patients, filling water pitchers, giving out flowers, changing unoccupied beds and accompanying patients to the discharge desk. On her third day of work at approximately 11:00 a.m., Miss Marcus was asked by a nurse to help her and a second nurse with an elderly male patient. Miss Marcus was asked to hold the patient up by his shoulders while the nurses washed the man and attended to his numerous bed sores. The man was unconscious and

completely naked, and the lower part of his body was covered with excrement. After she had been in attendance for several minutes, Miss Marcus began to feel nauseated and told one of the nurses that she did not feel well; shortly thereafter she fainted and in falling struck her face against an oxygen tank, lacerating her nostril and suffering a compound comminuted fracture of her nose.

Plaintiff was operated on at the hospital by Dr. Large, a plastic surgeon on the hospital staff, and remained hospitalized for four days. For a period of three months thereafter, she felt unable to go out in public because of the bulbous condition of her nose. Plaintiff was discharged from the operating physician's care in January, 1965, at which time, according to Dr. Large's testimony, there was no residual deformity. At the time of trial, some four years after the accident, there was a small scar on plaintiff's right nostril; Dr. Large testified that he believed the scar would disappear in time.

The present suit was brought by the minor plaintiff through her parents and by her parents in their own right. Named as defendants were Frankford Hospital and Lucy Hartman, who it is alleged was the head of the nursing services at the Hospital.[1] As indicated above, the jury returned a verdict in favor of plaintiffs, damages of $11,000 being awarded for Miss Marcus' pain, suffering and embarrassment.[2]

In support of defendants' motion for judgment n.o.v., it is contended, first, that the minor plaintiff was an employee of the hospital within the meaning of Section 22 of the Workmen's Compensation Act, Act of June 2, 1915, P. L. 736, Art. I, §104, as amended, 77 P.S.

---

[1] The court entered a nonsuit in favor of the defendant Lucy Hartman at the close of plaintiffs' case; the validity of that ruling is not at issue on this appeal.

[2] No claim was made for any special damages.

§22,[3] and therefore is limited to the remedies set forth in that Act. To establish that the minor plaintiff was an "employee" of the defendant it is necessary to establish that she performed her services "for a valuable consideration". As a matter of common sense Miss Marcus' status as a volunteer aide, a characterization which appellant accepts, would seem to belie the contention that she was an employee performing services for valuable consideration. In opposition to this position, however, the Hospital cites the fact that during her service as a volunteer, Miss Marcus was entitled to receive free meals in the Hospital cafeteria, a privilege of which she availed herself on one occasion. In our view, the privilege of receiving such meals on the premises of the Hospital was no more than a nominal gratuity extended by the Hospital incidental to plaintiff's services. It does not amount to "valuable consideration" within the meaning of the Workmen's Compensation Act. See e.g., *Brock v. Bowser*, 376 Pa. 209, 102 A. 2d 121 (1954) ; *Harris v. Seiavitch*, 336 Pa. 294, 9 A. 2d 375 (1939) ; and *Busch v. Bientzle*, 119 Pa. Superior Ct. 559, 181 Atl. 520 (1935).

To the same effect, appellant argues that the nurses' training which Miss Marcus received was itself "valuable consideration". There is no evidence, however, that the plaintiff received any training other than that minimal instruction in hospital procedures which was necessary to enable her to perform her volunteer duties properly. We cannot find that the court below erred in

---

[3] The term "employe", as used in this the Workmen's Compensation Act is declared to be synonymous with servant, and includes— "All natural persons, who perform services for another for a valuable consideration, exclusive of persons whose employment is casual in character and not in the regular course of the business of the employer, . . ." Appellees have not argued that the employment here was casual or not in the regular course of business of the Hospital.

holding that Miss Marcus was not an "employee" within the meaning of the Workmen's Compensation Act.

Appellant urges, alternatively, that its motion for judgment n.o.v. should have been granted because, as a matter of law, it was not negligent; it was not negligent, it says, because it owed no duty of care to Rochelle Marcus. We disagree. Although, as we have determined, Rochelle was not an employee within the meaning of the Pennsylvania Workmen's Compensation Act, she nevertheless stood in the position of servant to the Hospital. It is conceded she was subject to the control and direction of appellant, acting through its nursing staff. In situations where, as here, the Compensation Act is not applicable, it continues to be the law that, within certain limitations not here relevant, a master owes a duty not to subject its servants to unreasonable risks of harm, and incurs a common law liability if the duty is breached. See in general *Restatement (Second) Agency,* §§470, 494, 510; *Fuller v. Stewart Coal Co.,* 268 Pa. 328, 332, 112 Atl. 65 (1920); *McGrath v. Atlantic Refining Co.,* 264 Pa. 341, 107 Atl. 741 (1919). *Zeskie v. Penna. Coal Co.,* 241 Pa. 183, 88 Atl. 414 (1913). An unreasonable risk of harm may be involved if the task given to the servant to perform is not suitable to the servant's apparent capacity. *Dougherty v. Dobson,* 214 Pa. 252, 63 Atl. 748 (1906); *Kehler v. Schwenk,* 151 Pa. 505, 25 Atl. 130 (1892).

Given the nature and purposes of the services to be performed by Rochelle Marcus, the circumscribed extent of the training she received, the limited experience she had had during her two- to three-day period of work at the Hospital, combined with her extreme youth, all as described at the beginning of this opinion, it cannot be said as a matter of law that appellant owed no duty to its nurses' aide not to subject her, without warning or preparation of any kind, into a situation as unpleasant and emotionally disturbing as that to

which this child was subjected. That in such circumstances the minor might become so upset as to faint, with injurious consequences to herself, was not beyond the bounds of foreseeability to a reasonably prudent master.[4]

Appellant has stressed the social value of the Hospital in general and the "candy-striper" program in particular, and the fact that "what happened to the minor plaintiff in this case was a most unusual situation." All of this may be granted, but it does not serve to exonerate the master of its duty of due care to its servant under the circumstances of this case. Whether that duty was discharged or was breached was properly left by the trial court to the jury.

In support of its motion for new trial appellant challenges the court's charge on the issues of assumption of risk and contributory negligence. In short, the court charged that there was no evidence of contributory negligence and that the jury was not to consider the issue.[5] It further refused defendant's point for charge relating to assumption of risk.[6] In our view neither ruling was erroneous.

---

[4] Appellant has not argued that it should not be liable because the physical harm sustained in her fall was the result of emotional distress. See *Restatement (Second) Torts*, §§306, 313, 436. Cf., *Niederman v. Brodsky*, 436 Pa. 401, 261 A. 2d 84 (1970) ; *Papieves v. Kelly*, 437 Pa. 373, 379, 380, 263 A. 2d 118 (1970).

[5] The court's charge was as follows : "Members of the Jury, even though I have charged you as to the law involving what we call contributory negligence in Pennsylvania, there is no evidence in this case of contributory negligence by the plaintiff shown by either the defendant's testimony or the plaintiff's testimony. I, therefore, charge you as a matter of law, that there is no question of contributory negligence in this case, and you must arrive at a verdict based upon the law of negligence, as I have given it to you in this charge."

[6] Defendant's requested point for charge was as follows : "4. If you find that Rochell Marcus knew and appreciated or should have known and appreciated the activities which are performed in a

Our review of the record fails to indicate any evidence which could fairly be said to have put the matter of contributory negligence at issue, and appellant has not specified any such evidence for our consideration. We find no error in the court's instruction that contributory negligence was not a question for the jury in this case.

Defendant's contention that a charge on assumption of risk was required apparently rests on the proposition that plaintiff knew that she might be required to make beds with patients in them and that she had been in the men's surgical ward in which her accident occurred. As to this, it is sufficient to note that plaintiff testified without contradiction that her training was specifically designed to enable her to make beds with patients in them in a manner which would preclude the exposure of the patients. Neither that training nor plaintiff's previous experience in the surgical wards would have indicated to plaintiff that she would be asked to assist in activities of the sort which precipitated her fainting spell nor was there evidence that plaintiff could or should have known what her reaction would be to her experience with the elderly patient. In short, there was no evidence before the court which necessitated or rendered relevant a charge on assumption of risk.

Appellant raises certain other issues in support of its motion for a new trial which we have considered and in which we find no merit; we deem it unnecessary to discuss them individually.

Mr. Justice EAGEN and Mr. Justice O'BRIEN join in this opinion.

---

hospital and in particular the sight of the elderly patient which she observed immediately before her illness and injury, then you must find that she assumed the risk of the occurrence which caused her injury and you must find in favor of the defendant."

OPINION IN SUPPORT OF JUDGMENT N.O.V. BY MR. JUSTICE ROBERTS:

The opinion in support of the order, in refusing to reverse the lower court's denial of defendant's motion for judgment n.o.v. and a new trial, is condemning a well-run, safe and valuable volunteer program which provides hospitals with eager, helpful, and youthful assistance and helps attract many to the nursing profession. I cannot find any evidence of negligence to support a verdict against defendant, Frankford Hospital.

It is clearly established that there is a ". . . duty of one who employs young persons in his service to take notice of their apparent age and ability, and to use ordinary care to protect them from risks which they cannot properly appreciate, and to which they ought not to be exposed. . . . But the master is not required to point out dangers which are known or must be obvious to and fully appreciated by the servant, after making due allowance for his youth." Shearman and Redfield, Negligence §242 (1941); Restatement 2d, Agency, §§492, 494 (1958); cf. *Fisher v. United States*, 299 F. Supp. 1, 28 (E.D. Pa. 1969); *Gilkes v. Levinson*, 421 Pa. 128, 131, 218 A. 2d 722, 724 (1966). Furthermore, the master has the obligation to provide a safe place to work, safe instruments or tools, and warnings and instructions. Prosser, Torts §67 (1955).

The defendant, Frankford Hospital, amply satisfied its burden of care under the above standards. First, even before appellee was assigned by the Red Cross to Frankford Hospital, she was examined by a family doctor and granted written permission by her parents. At the hospital, as the opinion in support of the order observes, "she was given a two-day course of training and orientation by the hospital which consisted, inter alia, of lectures, demonstrations in giving out meals and flowers and *making beds occupied by patients,* and a

tour through the hospital." (Emphasis added.) The hospital had a rule prohibiting the volunteers from working in the pediatrics ward, obstetrics ward, and the emergency, accident, and operating rooms.

On the day of the accident, appellee was asked to hold an elderly patient by the shoulders while another nurse washed and cleaned him. After the exposure to the naked man and his filthy condition, appellee fainted and damaged her nose.

The record indicates that appellee was properly trained for her duties. Nor can it be argued that the task which resulted in her injury was too demanding or different from the tasks for which she had received instruction. Appellee had been taught how to change beds while they were occupied by the patients. The opinion in support of the order asserts, however, "that her training was specifically designed to enable her to make beds with patients in them in a manner which would preclude the exposure of the patients." I cannot take this to mean that if appellee had failed to follow her training and made a bed so as to expose a patient whose condition and appearance was equally as unpleasant as the elderly man in the present case that appellee would still recover damages if the exposure had caused her to faint and fall. There is also no reason why appellee should recover in the present case where she was asked to assist in the cleaning of a patient. While the exposure may have been unpleasant, the likelihood of equally unpleasant exposures would have existed whenever appellee changed an occupied bed. The hospital was not subjecting appellee to any greater duress or strain than would have occurred during the performance of appellee's other duties.

Hospitals are not pleasant institutions by definition. The struggle between life and death occurs daily within its walls. People with horrible diseases and unpleasant appearances are likely to be encountered. I

cannot agree that the hospital, with its carefully regulated volunteer program, was negligent in any way toward appellee. I would grant judgment n.o.v. Accordingly, I dissent.

Mr. Chief Justice BELL and Mr. Justice JONES join in this opinion in support of judgment n.o.v.