580 F.2d 72
 Gerald L. PLUMMER, Charles C. Ray, Alfred Jeffress, James B.
Smoak, Rosa Crespo, Burless Anderson, Kenneth A.
Moulden, Kenneth A. Jenkins, Frankie L.
Thomas, Orlando Jennings,
Theodore Harrison
v.
UNITED STATES of America.
Donald E. ALLEN,
v.
UNITED STATES of America.
Appeal of Donald ALLEN, Orlando Jennings, Alfred Jeffress
and Kenneth Jenkins, in No. 77-1121.
Appeal of Rosa CRESPO, James B. Smoak and Kenneth Moulden,
 in No. 77-1122.
 Nos. 77-1121, 77-1122.
 United States Court of Appeals,
Third Circuit.
 Argued April 25, 1978.
Decided May 26, 1978.
 
 Alan L. Director, Lee Mandell, Philadelphia, Pa., for appellants.
 S. John Cottone, U. S. Atty., Scranton, Pa., Joseph F. Cimini, Asst. U. S. Atty., Lewisburg, Pa., (Jonathan Hoffman, U. S. Dept. of Justice, Washington, D. C., of counsel on brief), for appellee.
 Before ALDISERT and ADAMS, Circuit Judges, and HANNUM, District Judge.*
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 Eight prisoners confined in a federal penitentiary brought the present suit under the Federal Tort Claims Act seeking damages as a result of allegedly negligent action by prison officials in exposing them to the active tuberculosis of a fellow prisoner. The trial court bifurcated the proceedings and heard the damage phase of the case first. It determined that the appellants here proved no compensable damages under the law of Pennsylvania, which is applicable under the Tort Claims Act.[1] Since we believe that the trial court erred in its application of the Pennsylvania rule in such situation, we reverse.
 
 A.
 
 2
 The plaintiffs were incarcerated in the United States Penitentiary in Lewisburg, Pennsylvania in early 1974, and were quartered near a fellow inmate, Samuel Bray. Upon his arrival at Lewisburg in 1973, Bray's routine physical examination had revealed "old, healed lesions on the left lung." In February 1974, Bray was examined by a prison physician because of a cough. Despite Bray's history of exposure to tuberculosis, the physician diagnosed Bray's malady as bronchitis and returned him to the prison population with a prescription for antibiotics. Subsequent examination of Bray's sputum specimens, however, revealed that Bray was in fact suffering from tuberculosis and, on May 16, 1974, he was hospitalized, isolated and treated for that disease.
 
 
 3
 Upon the discovery of Bray's true condition, the prison authorities proceeded to examine for evidence of infection other inmates who had been in contact with Bray. As a result, skin tests for the presence of tuberculosis were administered to those in Bray's environment; the tests revealed that the eight plaintiffs had been infected with tuberculosis during their contact with Bray. Though the complaining prisoners suffered no symptoms, their bodies harbored one or more dormant tubercle bacilli which could later develop into full-fledged cases of tuberculosis.
 
 
 4
 The treatment suggested by prison medical authorities to diminish the risk of such "reactivation" was a year-long dosage of a drug called "isoniazid" (INH). Although six of the plaintiffs accepted the treatment, two refused it because of the risk of hepatitis associated with the INH regimen. In addition, one of the plaintiffs, Charles Ray, who chose to take the INH, experienced allergic reactions to the drug.
 
 
 5
 After exhausting their administrative remedies, the eight prisoners brought suit under the Federal Tort Claims Act,[2] alleging that the prison authorities had been negligent in failing to recognize and treat Bray's condition earlier and more diligently, thereby exposing his fellow prisoners to infection. As damages, the prisoners claimed compensation for mental anxiety, for impaired earning capacity, and for the physical harm of an increased risk of developing tuberculosis because of the dormant bacilli in their bodies. Ray also asserted an entitlement to damages for the pain and suffering brought about by his allergic reaction to the INH treatment.
 
 
 6
 The case was tried before the Honorable Malcolm Muir sitting without a jury. Judge Muir first heard evidence regarding damages, and then examined the asserted negligence. As to the former issue, he found that none of the appellants other than Ray had suffered compensable damages, and limited Ray's potential recovery to $150 based on his allergic reaction. On October 19, 1976, the trial court entered judgment against all of the plaintiffs except for Ray. Thereafter, all the plaintiffs aside from Ray took an appeal from that judgment on December 13, 1976.
 
 
 7
 At his trial on the question of negligence, Ray rested on the testimony that he had previously presented in the damage phase of the case. After hearing the government's evidence, Judge Muir found that there was no negligence on the part of the prison personnel. He accordingly entered judgment for the United States. Ray took no appeal.
 
 B.
 
 8
 We must, of course, initially ascertain the basis of our jurisdiction. Although the appeals from Judge Muir's October 19th finding regarding damages were timely filed, when those appeals were docketed Judge Muir had not yet issued a final order, since the negligence portion of Ray's case remained unresolved.[3] Nonetheless, we held in Richerson v. Jones,[4]
 
 
 9
 that a premature appeal taken from an order which is Not final but which is followed by an order that Is final may be regarded as an appeal from the final order in the absence of a showing of prejudice (citations omitted) (emphasis in original).
 
 
 10
 Since in this case there is neither any allegation nor any proof of prejudice to the appellee, we treat the appeals from the October 19th order as appeals from the judgment dated February 19, 1977, which admittedly constituted a final disposition of the case.[5]
 
 C.
 
 11
 In its evaluation of the damage demands, the trial court found that none of the plaintiffs was precluded from any occupation by their infections, that the increased probability of tuberculosis due to "reactivation" was balanced by the immunity to outside infection conferred by the initial exposure, and that except for Ray none of the plaintiffs had experienced physical pain or suffering. Inasmuch as such determinations are not clearly erroneous, we may not reverse them.
 
 
 12
 Additionally, however, the trial court rejected the claim that the mental suffering experienced by the plaintiffs by reason of their infection constituted a recoverable injury under Pennsylvania law. This conclusion rests on what appears to be a crabbed interpretation of the governing cases.
 
 
 13
 Until 1970, the rule in Pennsylvania was that damages for mental suffering could be recovered only upon proof of "physical impact or physical injury" to the plaintiff caused by the defendant's tortious conduct.[6] In 1970, the Pennsylvania Supreme Court, in Niederman v. Brodsky, cast aside its prior position. It reversed the dismissal of a complaint brought by a father who did not assert physical impact but who claimed to have suffered a heart attack as the result of his agitation upon seeing his son struck down at his side by a skidding automobile.[7] Although Justice Roberts in that case adduced broad policy arguments in support of the decision "not sufficient to perpetuate the old impact rule simply in the name of precedent,"[8] the abandonment of the prerequisite of physical impact was limited by him to
 
 
 14
 cases like the one before us where the plaintiff was in personal danger of physical impact because of the direction of a negligent force against him and where the plaintiff actually did fear the physical impact.[9]
 
 
 15
 In the case before us the trial judge apparently viewed Niederman as controlling. Citing Conway v. Spitz,[10] a case where as in Niederman no physical impact was present, Judge Muir undertook to explicate the standard of Niederman. He stated:
 
 
 16
 There has been no demonstration of compensable mental suffering despite the recent relaxation in Pennsylvania of certain rules regarding recovery for mental anguish. See Niederman v. Brodsky, 436 Pa. 401, 261 A.2d 84 (1970). No plaintiff has demonstrated that his concern about his condition resulted in a "severe and concrete physical manifestation" which is fairly well understood by medical science. Conway v. Spitz, supra at 539.[11]
 
 
 17
 Thus Judge Muir apparently interpreted Niederman to require that in the absence of intentional, wanton or willful conduct a plaintiff must suffer a "severe and concrete physical manifestation" before recovery may be obtained for mental anguish.
 
 
 18
 The accuracy of such a premise is doubtful. Justice Roberts' opinion in Niederman made reference to the "gravity of the appellant's injury"[12], and the Court's policy discussion commented on the ability of medical experts to trace the causation of emotionally-induced physical traumas. However, Justice Roberts' summation of the case makes clear that the predicate for recovery was the "personal danger of physical impact" producing an emotional reaction, rather than the physical aftermath of that response. The crucial determinants were whether the plaintiff was in "personal danger" of physical impact and whether he "actually did fear" such impact.[13]
 
 
 19
 Recently in Scarf v. Koltoff,[14] the Superior Court construed Niederman as adopting the "zone-of-danger" rule. As Judge Spaeth explained it, damages resulting from mental shock are indeed recoverable but only by those who are placed in physical danger by the allegedly negligent action. The focal point of the test, according to Judge Spaeth, is the foreseeability of injury to the plaintiff. Under such a formulation, it would appear that the plaintiffs here have proven a compensable injury: the alleged negligence produced the danger that Bray's fellow prisoners would fall victim to tuberculosis, and the plaintiffs were within the foreseeable scope of that risk.[15]
 
 
 20
 Plaintiffs need not rely on Niederman's dilution of the impact requirement, however, for their damages are compensable even under the law extant before the innovation created by Niederman. That law, as it had evolved by 1961, allowed for recovery for mental anguish "where it is definitely established that injury and suffering were (proximately) caused by an act of negligence, and any degree of physical impact, however slight, can be shown."[16] Under such a rule, the "impact" of the tubercle bacilli which infected the bodies of the plaintiffs constitutes a sufficient physical nexus to allow compensation for the mental affliction of the plaintiffs.
 
 
 21
 Admittedly, the "impact" of a tubercle bacillus does not entail the palpable physical shock of a highway collision. But Pennsylvania cases have not required forceful physical contact to meet the strictures of the "impact" test.[17] The office of the impact rule is to guard against feigned claims by requiring physical evidence to substantiate the alleged impingement of the defendant's negligence on the psyche of the plaintiff, and by assuring that the danger perceived by the plaintiff was not imaginary.[18] Here, the physical effects of the exposure of the plaintiffs to the tuberculosis infection were corroborated by the results of a scientifically recognized skin test. And the effects of a concededly minute tubercle bacillus are potentially no less lethal than, for example, the impact of an automobile.
 
 D.
 
 22
 This Court has previously stated that Niederman supplemented and broadened, rather than replaced, the old "impact" rule. In Kahle v. Glosser Brothers,[19] we declared:
 
 
 23
 Thus recovery in the instant case would be allowed if either (1) a negligent "impact" were shown no matter how slight or (2) if the decedent was in personal danger of a negligent physical impact and where she was in actual fear of the impact.
 
 
 24
 Under Judge Spaeth's recapitulation of the Niederman rule, since the appellants fell within the foreseeable zone of physical danger of exposure to tuberculosis, the mental suffering which resulted from their infection may well warrant compensation. And under the older "impact" rule, the impingement of the tubercle bacilli on the prisoners' lungs renders their resultant fear of having contracted active tuberculosis, or of transmitting it to others in the future, compensable mental suffering. The determination of the trial court based on lack of damages to the appellants as a matter of law thus cannot stand.[20]
 
 
 25
 Accordingly, the judgment will be reversed, and the case remanded for action in accordance with this opinion.
 
 
 
 *
 Hon. John B. Hannum, U.S. District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 See United States v. Muniz, 374 U.S. 150, 153, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963)
 
 
 [2]
 28 U.S.C. § 2671, et seq
 
 
 [3]
 A "final order," required for exercise of an appellate jurisdiction under 28 U.S.C. § 1291, is one which "terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." St. Louis Iron Mountain and Southern Ry. Co. v. Southern Express Co., 108 U.S. 24, 28-29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883)
 
 
 [4]
 551 F.2d 918, 922 (3d Cir. 1977)
 
 
 [5]
 This analysis is, of course, applicable only to the prisoners who actually docketed appeals. As the United States notes, Ray was not listed as an appellant in the notices of appeal from the October 19th order, and thus has no appeal before us. In any event, Judge Muir's unappealed dismissal of Ray's case on the ground of a lack of negligence makes academic any alleged error as to Ray's compensable damages
 
 
 [6]
 E. g. Bosley v. Andrews, 393 Pa. 161, 142 A.2d 263 (1958); Knaub v. Gotwalt, 422 Pa. 267, 220 A.2d 646 (1966); Zelinsky et ux. v. Chimics, 196 Pa.Super. 312, 175 A.2d 351 (1961)
 
 
 [7]
 436 Pa. 401, 261 A.2d 84 (1970)
 
 
 [8]
 436 Pa. at 404, 261 A.2d at 85
 
 
 [9]
 436 Pa. at 413, 261 A.2d at 90. See also Papieves v. Lawrence, 437 Pa. 373, 263 A.2d 118 (1970) (impact rule is inapplicable in the case of wantonly or intentionally inflicted mental distress; such distress states actionable injury)
 
 
 [10]
 407 F.Supp. 536 (E.D.Pa.1975) (parents cannot recover for mental distress engendered by medical malpractice visited upon their son)
 
 
 [11]
 Judge Muir went on to comment: "Nor have they (the plaintiffs) alleged the 'intentional, outrageous, or wanton conduct' which might have entitled them to recover for their fears no matter how unfounded . . . ."
 Judge Muir's conclusion that the plaintiffs do not fall within the boundaries of the principle of Papieves v. Lawrence, supra note 9, is clearly correct. However, Papieves states a sufficient not a necessary condition for recovery of mental anguish.
 
 
 [12]
 436 Pa. at 404, 261 A.2d at 85
 
 
 [13]
 436 Pa. at 413, 261 A.2d at 90
 
 
 [14]
 242 Pa.Super. 294, 363 A.2d 1276 (1976)
 
 
 [15]
 Indeed the facts here seem to present an A fortiori case based on the recovery sustained in Marcus v. Frankford Hospital, 445 Pa. 206, 283 A.2d 69 (1971). There, the plaintiff a 14 year old girl working as a volunteer in a hospital was directed, without adequate training, to participate in the handling of a naked man, "the lower part of whose body was covered with excrement." After completing her task, the plaintiff fainted and struck her nose on the edge of oxygen equipment. The jury awarded, Inter alia, $11,000 in damages for pain, suffering and embarrassment. The Supreme Court affirmed, stating "That in such circumstances the minor might become so upset as to faint, with injurious consequences to herself, was not beyond the bounds of foreseeability to a reasonably prudent master." 445 Pa. at 213, 283 A.2d at 73
 
 
 [16]
 Zelinsky et ux. v. Chimics, 196 Pa.Super. 312, 175 A.2d 351 (1961) (allowing recovery for neurosis induced by "jostling" in 30 mile per hour automobile accident). See Potere v. City of Philadelphia, 380 Pa. 581, 589, 112 A.2d 100, 104 (1955) (allowing recovery for mental suffering "where a plaintiff sustains bodily injuries even though trivial or minor in character," in that case, a bruised elbow and sprained ankle). Bosley v. Andrews, 393 Pa. 161, 142 A.2d 263 (dictum); See also Niederman v. Brodsky, 436 Pa. 401, 406-407, 261 A.2d 84, 86-87 (1970) (old rule allowed recovery for fright accompanied by "any impact however slight")
 
 
 [17]
 See Hess v. Philadelphia Transportation Co., 358 Pa. 144, 56 A.2d 89 (electric shock constituted "impact"). Cf. Marcus v. Frankford Hospital, supra note 13
 
 
 [18]
 See, e. g. Bosley v. Andrews, 393 Pa. 161, 168-69, 142 A.2d 263, 266-67 (1958); Huston v. Freemansburg Borough, 212 Pa. 548, 550-551, 61 A. 1022, 1023 (1905). The impact requirement also has the virtue of carving out from the range of emotionally disturbing stimuli to which a member of society is subjected a clearly delimited class of such experiences which give rise to a tort action. Cf. Bosley v. Andrews, supra (suggesting that "any one of a dozen every-day events, can cause or aggravate fright or nervous shock, or emotional distress or nervous tension," and that to permit recovery in the absence of impact would "open a Pandora's box"). Allowing recovery predicated upon the ascertainable fact of infection by a contagious disease would not appear to disserve this aspect of the rule
 
 
 [19]
 462 F.2d 815, 817 (3d Cir. 1972) (sic)
 
 
 [20]
 As noted above, the appeal of Ray is not before us. And, since the appellants' claims had been dismissed before Ray declined to go forward with proof of negligence, the trial court's findings in Ray's case regarding negligence are not Res judicata as to the appellants. Nonetheless, such findings might indicate the advisability of the district court proceeding to try the negligence issue before attempting to ascertain damages