[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The question presented is whether, in this case, a person who is injured while volunteering for a charitable organization is a "gratuitous employee" who can sue the organization for failure to provide a safe working environment. The court holds that, in this case, there is no right to sue. Accordingly, the court grants the defendant's motion to strike the complaint.
BACKGROUND
The one-count complaint alleges that the defendant, Lea's Foundation for Leukemia Research, Inc., conducted a fund-raising raffle and auction at the Hartford Club on February 12, 2000. At the event, an agent of the defendant requested that the plaintiff, Donald Cantafi, and other volunteers carry a 900 pound Harley-Davidson motorcycle to the second floor banquet room where the raffle and auction were taking place because the motorcycle could not be accommodated by the elevator. In helping carry the motorcycle by hand, the plaintiff allegedly suffered an umbilical hernia. The plaintiff alleges that the defendant failed properly to supervise the plaintiff, failed to have a sufficient number of volunteers, failed to provide necessary equipment to carry the bike, and failed to provide proper warnings. The defendant moves to strike the complaint.
DISCUSSION
The court construes the allegations in a light most favorable to the plaintiff on a motion to strike. See Faulkner v. United TechnologiesCorp., 240 Conn. 576, 580, 693 A.2d 293 (1997). Based on these allegations, the court must decide whether the defendant owed a duty of care to the plaintiff. This issue is one of law for the court to decide. See Waters v. Autori, 236 Conn. 820, 826, 676 A.2d 357 (1996). Duty depends on the foreseeability of the harm as well as a determination of "the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal citations omitted). Clohessy v. Bachelor, 237 Conn. 31, 45-46, 675 A.2d 852
(1996).
At common law, a master or employer had the duty to provide a reasonably safe place for his servant to work. See Perille v.Raybestos-Manhattan-Europe, Inc., 196 Conn. 529, 538, 494 A.2d 555
(1985). At the beginning of the twentieth century, the General Assembly codified this principle in a statute that has now become General Statutes CT Page 9193 § 31-49.[1] Id., 538-39. With the advent of workers' compensation in Connecticut in 1913, the statute lost most of its purpose. Nonetheless, the statutory duty of an employer to provide a safe workplace may still survive in cases in which workers' compensation does not apply. Id., 543; See also id., 544-45 (Shea, J., concurring).
In this case, workers' compensation obviously does not apply because the defendant did not hire the plaintiff "for pay." General Statutes § 31-275(10). Thus, the court must confront the issue of whether any remaining aspect of the duty of an employer to provide a safe workplace for his employee can support a negligence action against the defendant.
The plaintiff contends that he is a "gratuitous employee" to whom his employer owes a duty.[2] There are no cases in Connecticut addressing the concept of a "gratuitous employee." The plaintiff relies on several similar cases from other jurisdictions in which courts have found liability on the ground that the plaintiff was a gratuitous employee rather that a mere volunteer. See Bond v. Cartwright Little League,Inc., 112 Ariz. 9, 536 P.2d 697 (1975) (plaintiff injured while volunteering to climb metal pole to remove stadium floodlight for little league); Fournier v. Rochambeau Club, 611 A.2d 578 (Me. 1992) (plaintiff injured while volunteering to slice meat for club's dinner).
A court reached a different result in Cottam v. First Baptist Church,756 F. Sup. 1433 (D. Colo. 1991), aff'd, 962 F.2d 17 (10th Cir. 1992). There the court found that the defendant church was not the gratuitous employer of a plaintiff who was injured while volunteering to repair a foot bridge at the church's camp site. After reviewing the cases from other jurisdictions, the court found that the power of control of the putative servant's actions was the most significant factor in identifying a master/servant relationship. Id., 1438.[3] This approach accords with Connecticut law insofar as the "right to control the means and methods used by the worker in the performance of his or her job" is the primary element in determining whether an employer-employee relationship exists. See Doe v. Yale University, 252 Conn. 641, 680-81, 748 A.2d 834 (2000).
In the present case, there are no alleged facts from which the court can infer the right to control. The plaintiff initially focuses on the allegation that the defendant requested the plaintiff's help. While it is true that, if the plaintiff came forward on his own initiative, one could more readily identify him as a pure volunteer rather than an employee, the reality is that many people "volunteer" only when asked to do so. Volunteer status does not depend on the simple question of who speaks first but rather is a continuum that focuses on whether the person is acting of his own free will. See Websters 3rd New International Dictionary (1961) (defining "volunteer" as "one who enters into or offers CT Page 9194 himself for any service of his own free will"). Here the plaintiff responded to a request without the inducement of being paid and without the prospect of personal gain other than the satisfaction of helping others. In ordinary parlance, the plaintiff was a volunteer, not an employee.[4]
It could also be argued that the defendant had the right to control the manner and means of employment in that it apparently required the plaintiff and others to carry the motorcycle by hand to the second floor of the banquet hall because the elevator could not accommodate the motorcycle. The allegations here, however, are very sketchy. While it appears that the defendant had some minimal control over the plaintiff for a short period of time, there is no suggestion that the defendant could control the plaintiff's comings and goings like that of a typical employee. This case is not one in which the defendant told the plaintiff to be back at the same place and time the next day to perform the same work. The plaintiff was not a candy striper or a museum volunteer on a regular schedule with assigned duties. Cf. Marcus v. Frankford Hospital,445 Pa. 206, 283 A.2d 69, 73 (1971) (hospital and candy striper had master/servant relationship). The plaintiff here rendered assistance to the defendant on a fleeting, one-time basis. He did not thereby become an employee, even a gratuitous one.
Ultimately, the question of duty in this case depends on "the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal citations omitted). Clohessy v. Bachelor, supra, 237 Conn. 45-46. To label anyone who assists another an "employee" with attendant rights to sue is a misnomer and a disservice. If a kindhearted person answers the request of another in a wheelchair to assist the other in crossing a particular street, the volunteer surely does not become the disabled person's "employee" with a right to sue if the volunteer injures himself in lending the assistance. Such an approach would discourage acts of charity and lead to unwarranted lawsuits. The court does not believe that the defendant's liability should extend to such results.
CONCLUSION
For the foregoing reasons, this court grants the motion to strike.
It is so ordered.
CARL J. SCHUMAN JUDGE, SUPERIOR COURT